UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL MORGAN,

                Petitioner,         **DECISION AND ORDER**
                                     **No. 1:11-CV-0390(MAT)**

     - vs -

WILLIAM LEE,

                Respondent.
_____

## I. Introduction

Michael Morgan ("Morgan" or "Petitioner") has filed a <u>pro</u> <u>se</u> petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his constitutional rights. Morgan's state custody arises from a judgment entered on November 15, 2006 in New York State County Court (Monroe County), convicting him, after a jury trial, of one count of Course of Sexual Conduct Against a Child in the First Degree (New York Penal Law ("P.L.") § 130.75(1)(a)) and two counts of Endangering the Welfare of a Child (P.L. § 260.10(1)).

## II. Factual Background and Procedural History

### A. The Trial

The conviction here at issue stems from Petitioner's sexual abuse of two young girls, J.C. and S.B.,[1] who were both less than eleven years-old when Petitioner repeatedly raped and sexually

_____

[1]

Respondent referred to the victims and their immediate family members by their first and last initials in order to protect their identities. <u>See</u> N.Y. Civil Rights Law § 50-b. The Court has followed the same convention.

abused them while they all shared a bedroom at an apartment in the City of Rochester during 2004 and 2005. Morgan is J.C.'s biological father and S.B.'s stepfather.

In 1997 or 1998, Petitioner became romantically involved with P.C., who had one daughter from a previous relationship, S.B., who was born on December 19, 1996. P.C. gave birth to Petitioner's daughter, J.C., on June 30, 1999. On January 26, 2002, P.C. gave birth to a son from another relationship, G.C., who was not sexually victimized by Petitioner.

In October of 2003, Petitioner, P.C., S.B., J.C., and G.C. moved into a one-bedroom apartment together in Rochester. At some point after they moved in, Petitioner kissed S.B. and inserted his tongue into her mouth.

In May of 2004, the family moved into a two-bedroom, apartment in Rochester, and Petitioner demanded that his girlfriend sleep in one bedroom with her son, while Petitioner slept in the other bedroom with the girls, S.B. and J.C. P.C. agreed to this unconventional idea because Petitioner insisted that neither he nor the girls wanted to sleep with P.C., and P.C. wished to avoid an ongoing argument with Petitioner.

Petitioner used the opportunity provided by the sleeping arrangements to rape, sodomize, and sexually abuse the girls from May of 2004, through late 2005. S.B. and J.C., who were nine- and seven-years-old, respectively, at the time of trial, testified that

Petitioner forced S.B. to climb on top of him and touched her chest and genitals; touched J.C.'s genitals; raped S.B. and J.C. vaginally; raped his J.C. anally; made both girls pose for him in the nude; required the girls to perform oral sex on each other; and forced J.C. to fellate him.

On December 1, 2005, the family moved to a new two-bedroom, apartment in Rochester, where Petitioner continued to share a bedroom with the girls. Over the next several weeks, Petitioner again raped J.C. vaginally and anally, and forced her to fellate him. Around Christmas of 2005, Petitioner touched S.B.'s chest and genitals. At some point after that, S.B. revealed Petitioner's abusive acts to P.C.'s aunt, Shirley Hampton, whom S.B. referred to as "Grandma." S.B. explained that she did not disclose the abuse earlier because she was afraid that she would get into trouble. On January 7, 2006, Hampton informed P.C. about the abuse. P.C. called the police and arranged to have the girls examined.

On January 10, 2006, P.C. brought S.B. and J.C. to see Dr. Ann Lenane, a pediatrician and the medical director of a program for abused children at Strong Memorial Hospital in Rochester. During her examination of J.C., Dr. Lenane detected "anal dilation" or "anal funneling," which occurs when the anus opens up during a manual examination. This can be a sign of anal sexual abuse but may also occur if a child is constipated. There was no evidence that J.C. was constipated at the time of this examination, however.

While examining S.B., Dr. Lenane found that the child had a yeast infection with accompanying tenderness of her hymenal and genital tissues. As a result, Dr. Lenane decided to complete her examination of S.B. at a later date.

On January 13, 2006, Petitioner was arrested and interviewed at the police station by Rochester Police Investigator Catherine Lucci. After she read Petitioner his rights, Investigator Lucci confronted Petitioner with S.B. and J.C.'s claims that he had had sex with them, and showed him the girls' drawings illustrating their claims. Petitioner denied abusing the girls. He told Investigator Lucci that he occasionally woke up to find the girls touching or "humping" him. He maintained that it was impossible for him to have had sex with them because his penis was "too large."

In a statement written out by Investigator Lucci and signed by Petitioner, he admitted that the girls slept in his bed at the two-bedroom apartment in 2004. He denied initiating sexual contact with them and instead blamed the two girls, stating that while he slept, S.B. grabbed and rubbed his chest and penis, and J.C. "humped" him.

On March 21, 2006, Dr. Lenane re-examined the girls and found that J.C.'s anus was still dilated. In addition, she exhibited symptoms of constipation, raising the question of whether J.C. suffered from anal funneling that caused her constipation, or whether she had become constipated as a result of sexual abuse,

which combined to cause her anal funneling. S.B.'s yeast infection had cleared by the time of the second visit, which enabled Dr. Lenane to conduct a complete examination of her genital area. In the lower part of S.B.'s hymen, Dr. Lenane detected "notches," which she testified develop after a tear in the hymen has healed, and which are consistent with sexual abuse of a child.

Stefan Perkowski, a licensed social worker and the director of program services at Child and Adolescent Treatment Services in Buffalo, New York, testified as an expert witness on Child Sexual Abuse Accommodation Syndrome ("CSAAS"). Perkowski explained that CSAAS is intended to enable clinicians to understand how children experience and respond to sexual abuse, but not to determine if abuse actually took place in a given instance. According to Perkowski, CSAAS consists of five categories of behavior, all of which may not be present in each case: helplessness; secrecy; entrapment or accommodation; delayed, conflicted or seemingly unconvincing disclosures; and recantation or retraction. Perkowski testified that a child may often exhibit "conflicted" disclosure of sexual abuse, meaning that the child wishes to speak out but fears the consequences of doing so, and therefore only small amounts of information, in a hesitant manner and without detail. Perkowski's opinion was that children who have suffered sexual abuse commonly delay or withhold disclosure, depending on their subjective experience.

**B.  The Conviction, Sentence, and Direct Appeal**

On September 22, 2006, the jury found Petitioner guilty of one count of Course of Sexual Conduct Against a Child in the First Degree regarding S.B., and two counts of Endangering the Welfare of a Child regarding both S.B. and J.C. The jury returned a verdict of not guilty on the count of Course of Sexual Conduct Against a Child in the First Degree regarding J.C. Petitioner was sentenced on November 15, 2006, to an aggregate determinate term of 25 years in prison, followed by five years of post-release supervision.

On April 30, 2010, the Appellate Division, Fourth Department, unanimously affirmed the judgment of conviction. People v. Morgan, 72 A.D.3d 1482 (4th Dept. 2010). On September 10, 2010, the New York Court of Appeals denied leave to appeal. People v. Morgan, 15 N.Y.3d 854 (2010).

**C.  The Federal Habeas Proceeding**

Petitioner filed an undated Petition which was received by this Court on May 6, 2011. Respondent concedes that the Petition is timely. In the Petition (Dkt #1), Petitioner asserts the following grounds for relief: (1) the prosecutor committed misconduct by withholding evidence from the grand jury and conspiring with Dr. Lenane to change a medical report; (2) the police committed fraud by removing from the case the initial investigating officer and withholding her report, and by bringing false charges against Petitioner; (3) the testimony of the prosecution's expert

psychological witness, Perkowski, was "hearsay" because he testified according to the prosecutor's instructions; (4) trial counsel was ineffective for "turn[ing] her back on [Petitioner]" and colluding with the prosecution to withhold evidence from Petitioner; (5) the trial court committed misconduct by violating "all" of Petitioner's rights; (6) the prosecutor committed misconduct and falsely procured an indictment by changing the date on which Petitioner testified before the grand jury; (7) the prosecution unfairly deprived Petitioner of a preliminary hearing; and (8) although Dr. Lenane drafted a medical report purportedly finding no indication that the victims had been sexually abused, she did not testify in the grand jury and testified falsely at trial. <u>See</u> Petition ("Pet"), ¶ 22 (Dkt #1).

On September 25, 2012, Respondent answered the petition and submitted a memorandum of law in opposition. <u>See</u> Dkt ##11, 12. On October 12, 2012, the Court received Petitioner's reply memorandum of law, which he titled "Petitioner Brief". <u>See</u> Dkt #13.

For the reasons that follow, Morgan's request for a writ of habeas corpus is denied and the Petition is dismissed. Specifically, Grounds One through Five of the Petition are dismissed as subject to an unexcused procedural default. Grounds Six through Eight, although unexhausted, are dismissed pursuant to 28 U.S.C. § 2254(b)(2).

## III. Arguments in Petitioner's Reply Brief

In his "Petitioner Brief", filed in response to Respondent's opposition memorandum of law, Morgan raises additional arguments, including additional alleged failure of trial counsel and errors by the trial court. These claims all are waived by Morgan's failure to assert them in his Petition. See Rule 2(c) of the Rules Governing Section 2254, Cases in the United States District Courts, foll. 28 U.S.C. § 2254 ("The petition must . . . specify all the grounds for relief available to the petitioner. . . ."); see also Parker v. Scott, 394 F.3d 1302, 1327 (10th Cir. 2005) ("Parker raises several other alleged failures of counsel to object at trial, all of which he has waived by failing to assert them in his district court habeas petition."). Raising an issue for the first time in a reply brief or traverse is insufficient to preserve it. raising an issue for the first time in a reply brief or traverse is insufficient to preserve it. See, e.g., Tyler v. Mitchell, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the . . . argument was first presented in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it.") (citations omitted); Jackson v. Duckworth, 112 F.3d 878, 880 (7th Cir. 1997) ("Because a traverse is not the proper pleading to raise additional grounds for relief, we find that Jackson has not advanced a cognizable equal protection claim.") (citation omitted) (internal quotation marks omitted));

_Cacoperdo v. Demosthenes_, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief . . . . Habeas claims that are not raised before the district court in the petition are not cognizable on appeal.").

## IV. Exhaustion

Respondent argues that all of Petitioner's eight claims are unexhausted because he failed to invoke one complete round of New York's established appellate review process. _See_ _O'Sullivan v. Boerckel_, 526 U.S. 838, 845 (1999). Petitioner appears to assert in his reply brief that he exhausted his claims by asserting them in his _pro se_ supplemental appellate brief on direct appeal. As discussed below, the Court agrees with Respondent that none of Petitioner's claims are exhausted.

### A. General Legal Principles

In general, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-(A) the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A). To satisfy the exhaustion requirement, the petitioner "must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." _Baldwin v. Reese_, 541 U.S. 27, 29 (2004) (quoting _Duncan v. Henry_, 513 U.S. 364, 365-66 (1995);

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). In other words, the petitioner must give each state appellate court "a fair opportunity to pass on his federal claim." Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000) (citations omitted). The appellate courts are not required to tease out various issues or search through a petitioner's papers as if for a "'needle in a paper haystack.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Mele v. Fitchburg Dist. Court., 850 F.2d 817, 822 (1st Cir. 1989)). The petitioner must inform the appellate court in a sufficiently clear manner that he is asserting a particular federal claim. See id.

**B.    Petitioner Failed to "Fairly Present" All of His Claims.**

Petitioner's appellate counsel filed a brief in the Appellate Division, arguing only that the trial improperly denied Petitioner's request to proceed pro se at trial. On October 29, 2009, the prosecution filed an opposition brief, and on November 13, 2009, Petitioner's appellate counsel filed a reply brief. On December 21 2009, Petitioner filed a pro se supplemental appellate brief in which raised a number of other claims, namely, Grounds One through Four and Six through Eight of the Petition.

On April 30, 2010, the Appellate Division unanimously affirmed the judgment of conviction and held that the trial court did not err in denying Petitioner's request to proceed pro se because it was equivocal and therefore improperly invoked. People v. Morgan,

72 A.D.3d at 1482-83. In its memorandum order, the Appellate Division made no reference at all to any of the claims raised in Petitioner's pro se brief.[2]

Appellate counsel sought leave to appeal to the New York Court of Appeals. The leave application stated that appellate counsel was enclosing the following materials: "the briefs that were submitted by the appellant and respondent," the appendix, and the Appellate Division's decision. Presumably appellate counsel enclosed the brief he filed, but it is not clear whether appellate counsel also enclosed Petitioner's pro se supplemental brief filed with the Appellate Division.[3] In the leave letter, appellate counsel argued the issue of whether Petitioner was improperly denied the right to represent himself at trial. Appellate counsel did not mention any of the issues asserted in Petitioner's supplemental pro se brief. Petitioner did not file a pro se leave application. As Respondent argues, the claims asserted in Petitioner's pro se brief (Grounds One through Four and Six through Eight) were not "fairly presented"

---

[2]
It did not say, for instance, that Petitioner's remaining claims were without merit.

[3]
On December 2, 2009, the Appellate Division apparently granted Petitioner permission to file a pro se brief, was filed in that court on December 21, 2009. Respondent's Memorandum of Law at 9 n.4 (citation omitted). Petitioner did not attach proof of service, and the Monroe County District Attorney's Office informed Respondent that it never received a copy of the brief. However, the Appellate Division apparently did not reject the brief for failure to serve it upon the prosecution.

to the New York Court of Appeals. See Jordan v. Lefevre, 206 F.3d 196, 198-99 (2d Cir. 2000) (finding that appellate counsel's "arguing one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction"; stating that "[h]ad appellant more clearly stated that he was pressing all of the claims raised in the attached brief, or had his letter made no argument in detail but rather only '"request[ed that the Court of Appeals] consider and review all issues outlined in defendant-appellant's brief,"' the result here would be different and the remaining claims would have been fairly presented to the Court of Appeals") (quoting Morgan v. Bennett, 204 F.3d at 370-71). The Court notes that in his Petition, Morgan admits that on direct appeal, he only raised the issue of whether his right to proceed pro se was improperly denied. See Pet. at 2, ¶ 11 ("I made two arguments [to the Court of Appeals]. The first is that Mr. Morgan's statement he would like to represent himself, second the People argue that, by proceeding to trial[,] Mr. Morgan abandoned his request.").

Because Petitioner failed to "fairly present" any of the claims raised in his pro se appellate brief to the state's highest court, they are all unexhausted. See id.; see also Baldwin v. Reese, 541 U.S. at 29.

Petitioner's remaining claim, that the trial court violated "all" of his rights (Ground Five), was raised for the first time in the Petition. As it has never been presented to any appellate court in New York state, it is unexhausted as well. Id.

## 2. Petitioner's Record-Based Claims Must Deemed Exhausted and Procedurally Defaulted

For exhaustion purposes, "'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d at 120 (quoting Harris v. Reed, 489 U.S. 255, 263 n. 9 (1989)). At this stage, Morgan is procedurally barred from returning to state court to exhaust Grounds Five through Eight, which are record-based claims that the trial court violated "all" of his rights; the prosecutor fabricated an indictment by altering the date on which Petitioner testified before the grand jury; Petitioner erroneously was deprived of a preliminary hearing; and Dr. Lenane improperly failed to testify before the grand jury and testified falsely at trial.

Petitioner cannot obtain further direct review of these claims because he has already completed his direct appeal. By statute, New York law used to specifically provide for only a single application for direct review. Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 170 (2d Cir. 2000) (relying on former New York Rules for the Court of Appeals § 500.10(a)

(discussing leave applications for criminal appeals)). Section 500.10 has since been amended, and criminal leave applications are now addressed in N.Y. R. Ct. § 500.20. Although Rule 500.20 "does not specifically state that there may be only one application for appeal, see N.Y. R. Ct. § 500.20, such a restriction may be inferred," since "[b]oth Rule 500.20(d) and CPL § 460.10(5) provide a 30-day window for any such application to be filed; this time limit would be meaningless were multiple applications permitted." Colon v. Connell, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n. 4 (S.D.N.Y. July 9, 2009) (noting that both N.Y. R. Ct. § 500.20(d) and N.Y.Crim. Proc. Law § 460.10(5) provide a 30-day window for any such application to be filed); accord, e.g., Cunningham v. Conway, 717 F.Supp.2d 339, 365 (W.D.N.Y. 2010) (collecting cases). In addition, Section 500.20(a)(2) provides that the leave letter must indicate that "that no application for the same relief has been addressed to a justice of the Appellate Division, as only one application is available[.]" N.Y. R. CT. § 500.20(a)(2). Petitioner's failure to have "fairly presented" the claims on direct appeal now forecloses further collateral review in state court, see N.Y. Crim. Proc. Law § 440.10(2)(c) (mandating dismissal of motion to vacate if sufficient facts appeared on the record to have allowed claim to raised on direct review).

"[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" federal habeas courts also must deem the claims procedurally defaulted." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001)(citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). Ordinarily, federal courts may not review procedurally barred claims unless the petitioner can show both cause for the default and prejudice resulting therefrom, or that a fundamental miscarriage of justice would occur if the federal court declines to review the habeas claim. Coleman, 501 at 749-50.

Here, Petitioner has not suggested any circumstance that would constitute cause for the default. Thus, there is no need to analyze whether prejudice resulted. Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985).

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Murray, 477 U.S. at 496. Such a claim may not be "based on trial evidence, [where] courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict." House v. Bell, 547 U.S. 518, 538 (2006). Petitioner here conclusorily asserts that he is innocent, claiming that the police

filed false charges against him and Dr. Lenane falsified her medical report. "[A] substantial claim that constitutional error has caused the conviction of an innocent person . . . is extremely rare[,]" and "to be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). Morgan has not proffered new, reliable evidence establishing that he is factually innocent, and that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327. Therefore, Morgan cannot satisfy the "fundamental miscarriage of justice" exception to the procedural default rule. Aparicio v. Artuz, 269 F.3d 78, 89-90 (2d Cir. 2001). Thus, Petitioner's record-based claims of prosecutorial misconduct in the grand jury, improper denial of a preliminary hearing, and Dr. Lenane's alleged improprieties (Grounds Six through Eight of the Petition) are procedurally barred from habeas review, and the Court dismisses them without reaching their merits.

> **3. Petitioner's <u>Dehors</u>-the-Record Unexhausted Claims Are Not Procedurally Barred But Should Be Dismissed Pursuant to 28 U.S.C. § 2254(b)(2).**

Petitioner's other unexhausted claims include assertions that the prosecutor committed misconduct by withholding evidence from the grand jury and conspiring with Dr. Lenane (Ground One); the police committed fraud and misconduct (Ground Two); the

prosecution's expert psychological witness testified according to the prosecutor's instructions (Ground Three); and trial counsel was ineffective (Ground Four). <u>See</u> Pet., ¶ 22, Grounds 1-4 (Dkt #1). As Respondent argues, because these claims are based on facts <u>dehors</u> the record, Petitioner is not procedurally barred by C.P.L. § 440.10(2)(c) from filing a collateral motion to vacate the judgment. <u>E.g.</u>, <u>Simms v. Moscicki</u>, No. 06 Civ.2056(DLC)(AJ), 2006 WL 2466811, at *10 (S.D.N.Y. Aug. 25, 2006) (collecting cases).

Because Petitioner did not exhaust available state court remedies for these claim, his habeas petition is considered "mixed" inasmuch as it includes both exhausted and unexhausted claims. <u>Pratt v. Greiner</u>, 306 F.3d 1190, 1197 (2d Cir. 2002). When faced with a mixed petition such as this, a district court has the authority to deny the entire petition "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(2); <u>see also</u> <u>Gandarilla v. Artuz</u>, 322 F.3d 182, 186 (2d Cir. 2003). Section 2254(b)(2) "affords [P]etitioner the opportunity he seeks: to have his constitutional claim considered by this Court on habeas review[,]" thereby "effectuat[ing] congressional intent, conserv[ing] judicial resources, and afford[ing] [P]etitioner prompt adjudication of his claim." <u>Cowan v. Artuz</u>, No. 95 Civ. 9967 (RPP) (THK), 1996 WL 631726, at *5 (S.D.N.Y. Oct. 24, 1996); internal and other citations omitted). In

the interest of judicial efficiency, the Court elects to consider the mixed petition and deny it in its entirety pursuant to 28 U.S.C. § 2254(b)(2).

## IV. Merits of Petitioner's Unexhausted Claims

The Second Circuit and the Supreme Court have not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2). Some lower federal courts have expressed the test as whether it is "perfectly clear" that the petitioner does not raise even a colorable federal claim, while others have asked whether the petitioner's unexhausted claims are "patently frivolous." Hernandez v. Lord, No. 00 Civ. 2306(AJP), 2000 WL 1010975, at *4 & nn. 7, 8 (S.D.N.Y. July 21, 2000) (collecting and comparing cases). In Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court held that it would be an abuse of discretion to stay a mixed petition when the unexhausted claims are "plainly meritless." Id. at 277. Several district courts have suggested that this represents the proper standard for the exercise of authority granted by 28 U.S.C. § 2254(b)(2). E.g., Velazquez v. Poole, 614 F. Supp.2d 284, 344 (E.D.N.Y. 2007). The Court need not decide which standard is appropriately used to determine when to consider the merits of unexhausted claims pursuant to § 2254(b)(2), as the unexhausted claims presented here do not warrant habeas relief under any possible standard of review.

**A.  Ground One: The Prosecutor Committed Misconduct.**

Petitioner asserts in his Petition that the prosecutor "hid evidence from grand jury, what was established into law, saying there was absolutely no finding [of abuse] on the girls, then she conspired with [D]octor [Lenane] to change [the] medical report . . . ." Pet. at 7, ¶ 22A. Petitioner's claim that the prosecutor concealed exculpatory evidence from the grand jury does not present a cognizable constitutional claim. Following a guilty verdict rendered by a petit jury, alleged deficiencies in a state grand jury proceeding are rendered harmless. Lopez v. Riley, 865 F.2d 30, 31-32 (2d Cir. 1989) (citing United States v. Mechanik, 475 U.S. 66, 70 (1986)). Thus, after a conviction, habeas relief is unavailable for claims of prosecutorial misconduct in the grand jury. Lopez, 865 F.2d at 32; see also Campbell v. Poole, 555 F. Supp.2d 345, 367-68 (W.D.N.Y. 2008); Dunn v. Sears, 561 F, Supp.2d 444, 453 (S.D.N.Y. 2008).

Petitioner's claim that the prosecutor conspired with Dr. Lenane to alter a medical report is based on pure speculation. "[A] federal court may not grant habeas relief based upon unsubstantiated conclusions, opinions, or speculation." Smith v. Lempke, 08 Civ. 6065, 2010 WL 2629794, at *8 (W.D.N.Y. June 28, 2010) ("[T]he Court has reviewed the record in its entirety and has found nothing to support a claim of prosecutorial misconduct . . . .") (citing Wood v. Bartholomew, 516 U.S. 1, 8 (1995) (federal

courts should not grant "habeas relief on the basis of little more than speculation with slight support")). Petitioner accordingly has not provided a foundation upon which a claim of prosecutorial misconduct can be made.

**C.  Ground Two: The Police Committed Fraud and Misconduct.**

Petitioner asserts in his Petition that the police officers who investigated the case committed "misconduct and fraud" because the "police officer who took the first investigation report was taken out of the picture completely and her investigation report also, so they could brought up false charges against [him]." Pet. at 8, ¶ 22B. He has not indicated how or when this officer was removed from the case, or how Petitioner was prejudiced by this change in police personnel. Petitioner's conclusory assertions regarding the significance of this purported change in personnel do not make out a claim of wrongdoing on the part of the police. Hi contention that the police fabricated charges against him is merely a repackaging of his self-serving claim of innocence and is unsupported by any evidence. See Wood, 516 U.S. at  8.

**D.  Ground Three: The Prosecutor Suborned Perjury From the Psychological Expert Witness**

Petitioner claims in his Petition that the prosecution's psychological expert witness, Perkowski, "only . . . got knowledge of this case . . . from siting [sic] with District Attorney for about an hour, who told him what to say." Pet. at 8, ¶ 22C. Although Petitioner characterizes this claim as a violation of the

hearsay rule, the claim essentially asserts that the prosecutor suborned perjury, allegedly by dictating Perkowski's testimony. The claim is entirely speculative.

A claim that a conviction was based on perjured testimony is analyzed under the Due Process Clause. Napue v. Illinois, 360 U.S. 264, 269 (1959). To obtain relief on the basis the prosecutor used perjured testimony to secure the conviction, petitioner must show (1) that the testimony was actually false; (2) that the prosecution knew, or should have known, of the perjury, and (3) that there was a "reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976). Here, apart from his own unsubstantiated, unsworn assertions, Petitioner has supplied no evidence that Perkowski gave false testimony or that the prosecutor permitted him to do so. His claim accordingly must fail. See Cusamano v. Donelli, 06 Civ. 6047, 2010 WL 2653653, at *5 (S.D.N.Y. July 1, 2010) ("[O]ther than attempting to apply a label [of perjury] to [ ] inconsistencies, [petitioner] cites no legal authority or facts to support his argument that the prosecution's conduct deprived him of a fair trial."); Thompson v. Artuz, No. 06-CV-0254(RJA)(VEB), 2011 WL 736060, at *9 (W.D.N.Y. Jan. 4, 2011) ("[P]etitioner cannot demonstrate that Hobbs' testimony was perjured, let alone that the prosecutor suborned perjury. In the absence of any evidence that Kevin Hobbs testified untruthfully, petitioner cannot show a

reasonable likelihood that untruthful testimony could have affected the jury's judgment.").

E. **Ground Four: Trial Counsel Failed to Provide Effective Assistance.**

Petitioner claims that his trial counsel was ineffective because she "turned her back on [him], and hid evidence from [him] to satisfied [sic] her friends, so they could fraud this whole case, and violated all [his] rights." Pet. at 8, ¶ 22D. Petitioner's assertions do no come close to satisfying the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).

The Strickland standard requires a petitioner to show both that counsel's representation "fell below an objective standard of reasonableness" determined according to "prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694. Because of the difficulties inherent in evaluating counsel's performance after conviction, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quotation omitted).

It is beyond debate that a federal court may not grant habeas relief based upon a petitioner's unsubstantiated conclusions, self-

serving opinions, or speculation. See Wood v. Bartholomew, 516 U.S. at 8 (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"). Here, Petitioner's claim provides no foundation upon which a violation of the Sixth Amendment right to the effective assistance of counsel can be made. Instead, his claims amount to no more than second-guessing from a litigant who is disappointed with the result of his day in court. The law does not provide relief in such cases. See United States v. Aulet, 618 F.2d 182, 190 (2d Cir. 1980) ("As in so many cases of this type, the petitioner freely equates lack of success in his criminal defense with counsel incompetency, and illogically and irrationally blames his predicament, which is primarily of his own doing, upon the inability of counsel to extricate him."). The Court notes that despite the extremely compelling evidence against her client, trial counsel convinced the jury to acquit Morgan of the count alleging Course of Sexual Conduct charge against his daughter, J.C. "[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." Harrington v. Richter, 131 S. Ct. 770, 791 (2011). As Respondent argues cogently in his Memorandum of Law, trial counsel provided zealous and competent representation on Petitioner's behalf in a very difficult case.

**F.   Ground Five: The Trial Judge Committed Misconduct.**

Petitioner claims, for the first time in his Petition, that the trial court violated "all" of his rights. Pet. at 8, ¶ 22E. A habeas petitioner must "specify all grounds for relief which are available" and "set forth in summary form the facts supporting each of the grounds thus specified." Rule 2(c) of the Rules Governing Section 2254 Cases, foll. 28 U.S.C. § 2254. It is well-established that a habeas petitioner bears the burden of proving that his constitutional rights were violated in the state court proceeding. Whitaker v. Meachum, 123 F.3d 714, 716 (2d Cir. 1997) (citing Walker v. Johnston, 213 U.S. 275, 286 (1941) (petitioner has the burden of "sustaining his allegations by a preponderance of evidence" on collateral review)). Therefore, a habeas claim may be summarily dismissed where the allegations are "'vague, conclusory, or palpably incredible.'" Dory v. Comm'r of Corr. of State of N.Y., 865 F.2d 44, 45 (2d Cir. 1989) (per curiam) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)); Maddox v. Lord, 818 F.2d 1058, 1061 (2d Cir. 1987) (court can deny habeas petition when claims put forward are merely vague or conclusory). Petitioner's claim of trial court error is no more than a recapitulation of the unsubstantiated allegations made in the rest of his petition. Because Petitioner has wholly failed to establish that the trial court engaged in any conduct that was improper, let alone so "fundamentally unfair" as to deprive him of due process, this claim is dismissed. See Gayle v. Scully, 779 F.2d 802, 807, 812 (2d Cir.

1985) (finding that judge's intervention in trial, while frequent, "was not substantially adverse to [petitioner] to the point of exceeding constitutional bounds").

## V.   Conclusion

For the reasons stated above, Michael Morgan's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Morgan has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    October 26, 2012
          Rochester, New York